**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 25-2995

Caption [use short title]

**Motion for:** Stay Pending Appeal of Preliminary

Injunction Issued under 5 U.S.C. § 705

Doe v. Noem

Set forth below precise, complete statement of relief sought:

The government requests a stay of the district court's

November 19, 2025 order granting a preliminary

injunction under 5 U.S.C. § 705.

**MOVING PARTY:** Defendants/Appellants　　　**OPPOSING PARTY:** Plaintiffs/Appellees

☐ Plaintiff　　☑ Defendant

☑ Appellant/Petitioner　　☐ Appellee/Respondent

**MOVING ATTORNEY:** Mark Osmond　　**OPPOSING ATTORNEY:** Megan McLaughlin Hauptman

[name of attorney, with firm, address, phone number and e-mail]

U.S. Attorney's Office, SDNY　　　　International Refugee Assistance Project

86 Chambers Street, Floor 3, New York, NY 10007　　650 Massachusetts Avenue, NW, Suite 600

212-637-2713; mark.osmond@usdoj.gov　　646-939-7329; mhauptman@refugeerights.org

**Court- Judge/ Agency appealed from:** Southern District of New York / Katherine Polk Failla

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☑ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☑ No

Requested return date and explanation of emergency: _____

We request a return date of Thursday, December 11. The reason for the emergency is that the district court indefinitely postponed a lawful, unreviewable determination by Secretary of Homeland Security that Syria's Temporary Protected Status should be terminated based on considerations of foreign policy, national security, and the national interest.

Is the oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☑ No If yes, enter date: _____

**Signature of Moving Attorney:**

MARK OSMOND _Digitally signed by MARK OSMOND Date: 2025.12.04 14:02:51 -05'00'_ **Date:** 12/4/2025　　Service : ☑ Electronic ☐ Other [Attach proof of service]

**Form T-1080 (**rev. 10-23)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| |
|---|
| Dahlia Doe, et al., |
|     Plaintiffs-Appellees, |
|   v. |
| Kristi Noem, Secretary, United States Department of Homeland Security, in her official capacity, et al., |
|     Defendants-Appellants. |

Docket No. 25-2995

**Defendants-Appellants' Emergency Motion for a Stay Pending Appeal and for an Immediate Stay During the Consideration of This Motion**

**Introduction**

Congress created Temporary Protected Status ("TPS") to provide temporary protection to noncitizens who cannot safely return to their country because of natural disaster, armed conflict, or other "extraordinary and temporary conditions." 8 U.S.C. § 1254a(b). In 2012, the Secretary of Homeland Security designated Syria for the TPS program due to a violent crackdown by its then-president Bashar al-Assad. Over a decade later, in 2025, the Secretary terminated Syria's TPS designation, following the statutory procedures. The Secretary found that the Assad regime had fallen, violent conflict in Syria was

reduced, millions of Syrians were returning to their homes, and extending Syria's TPS designation could harm new U.S. diplomatic engagement with Syria. The Secretary thus determined that TPS for Syria would end on November 21, 2025.

The TPS statute provides that "[t]here is no judicial review" of that decision—which, in any event, was amply supported. But the district court granted a motion by seven Syrian nationals to universally postpone the agency's action under 5 U.S.C. § 705.

That was error, and the district court's order should be stayed—as the Supreme Court has twice determined in substantially similar cases. In March of this year, a district court stayed the Secretary's termination of TPS for Venezuela; the Supreme Court granted a stay pending appeal. *Noem v. National TPS Alliance* ("*NTPSA*"), 145 S. Ct. 2728 (2025). In doing so, it necessarily determined that the government would likely prevail and that the balance of equities favored letting the termination take effect. Later, when the same district court granted summary judgment for the plaintiffs, the Supreme Court again stayed the judgment pending appeal. *Noem v. NTPSA*, No. 25A326, 2025 WL

2

2812732, at *1 (Oct. 3, 2025). Other courts of appeals have likewise permitted TPS terminations to take effect.[1]

The district court granted essentially the same relief that the Supreme Court has twice stayed. It also acted contrary to a provision of the Immigration and Nationality Act ("INA") that expressly stripped it of jurisdiction to restrain any government action regarding the TPS statute. And the Secretary's actions are amply justified even if reviewable. The Court should grant a stay pending appeal.

The government respectfully requests a ruling on this motion by January 5, 2026, in order to permit the termination to take effect without unnecessary delay.

## Statement

### A. Statutory Background

The Immigration Act of 1990 established a program for temporary, discretionary shelter in the United States for aliens from countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the

---

[1] *CASA, Inc. v. Noem*, 2025 WL 2028397 (4th Cir. July 21, 2025); *Noem v. NTPSA*, No. 25-4901, Dkt. No. 19.1 (9th Cir. Aug. 20, 2025).

3

aliens' safe return. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary, "after consultation with appropriate agencies," to designate countries for TPS if the Secretary determines the statutory conditions for designation are met. 8 U.S.C. § 1254a(b); *see id.* § 1103; 6 U.S.C. § 557 (transferring authority to Secretary). One such condition is that "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." *Id.* § 1254a(b)(1)(C). A TPS designation may be up to eighteen months, then extended in periods up to eighteen months after periodic review. *Id.* § 1254a(b)(2)(B), (b)(3)(C). An eligible alien who is a national of a designated country may be granted TPS and thus may not be removed from the United States and is authorized to work during the designation. *Id.* § 1254a(a), (c).

If the Secretary finds that a country "no longer continues to meet" the statutory conditions for designation after consulting with appropriate agencies, she "shall terminate the designation" by publishing notice in the Federal Register at least sixty days in advance. *Id.* § 1254a(b)(3)(B).

4

The statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b)(5)(A).

## B. Factual Background

In 2012, the Secretary designated Syria for TPS due to "extraordinary and temporary conditions in Syria" resulting from "a brutal crackdown" by former Syrian President Bashar al-Assad. 77 Fed. Reg. 19,026, 19,026-27 (2012). The designation was extended based on those conditions and "ongoing armed conflict." 90 Fed. Reg. 45,398, 45,399 (Sept. 22, 2025) (listing extensions).

On September 22, 2025, the Secretary announced that Syria's TPS designation would be terminated effective November 21, 2025. 90 Fed. Reg. 45,398 (the "Notice"). The Secretary considered whether "extraordinary and temporary conditions" continued to prevent Syrian nationals from safely returning home; permitting Syrian nationals to remain temporarily was contrary to U.S. national interest; armed conflict is ongoing within Syria; and requiring Syrian nationals to return would pose a serious threat to their safety. *Id*. at 45,399-400.

5

The Secretary found that the Assad regime fell in December 2024 and, since then, Interim President Ahmed al-Sharaa had taken steps to establish a governing infrastructure for the country and a legal framework for the post-Assad era. *Id.* at 45,400. The Secretary also noted that in May 2025, President Trump met with President al-Sharaa and announced that the United States would lift sanctions and normalize relations with Syria. *Id.*

The Secretary also found that while some "sporadic and episodic violence occurs in Syria," the situation no longer meets the criteria for a conflict that poses "a serious threat to the personal safety of returning Syrian nationals." *Id.* Since the Assad regime fell, the nature of violence had changed: a "national-level war" shifted to "localized clashes" and then lessened to "sporadic, isolated episodes of violence." *Id.* While current events in Syria presented "continuing security challenges," they did not reflect "full-scale conflict." *Id.* The Secretary underscored improvements undertaken by the Interim President, including establishing a caretaker cabinet and initiating mechanisms such as the National Dialogue Conference. *Id.* Such efforts demonstrated the Syrian

6

government's effort to "move the country to a stable institutional governance, not a perpetuation of armed conflict." *Id.*

The Notice observed that while most Syrians required humanitarian assistance, the U.N. estimated that, since 2024, over 1.2 million Syrians returned to the country and over 1.7 million internally displaced Syrians returned home. *Id.* The Secretary found that continued TPS designation of Syria was contrary to the national interest, in part because the government lacks access to information to reliably vet Syrians applying to enter the United States given the lack of a U.S. embassy in Syria. *Id.* at 45,401. The Secretary also found compelling foreign policy reasons for ending the TPS designation, including that extending it would "complicate the administration's broader diplomatic engagement with Syria's transitional government." *Id.* at 45,401-02.

## C. Proceedings Below

Plaintiffs commenced this action on October 20, 2025, challenging the Secretary's termination of Syria's TPS designation under the APA and the Fifth Amendment. Plaintiffs moved to postpone the termination under 5 U.S.C. § 705. That motion "turn[s] on the same factors as

7

preliminary injunctions." *Immigrant Defenders Law Center v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025).

On November 19, 2025, the district court granted plaintiffs' motion in a bench ruling followed by a written order, indefinitely and universally postponing the termination. (Nov. 19, 2025 Tr. 35; Dist. Ct. Dkt. No. 54).

The court gave no weight to the Supreme Court's *NTPSA* orders, concluding that any inferences from those orders would be "speculation." (Nov. 19 Tr. 5). Concerning § 1254a's bar on judicial review, the district court noted there is a presumption of judicial review absent a "clear statement" from Congress. (Nov. 19 Tr. 9-10). The court concluded § 1254a(b)(5)(A) may bar review of TPS determinations but not "policies or practices employed in making such determinations." (Nov. 19 Tr. 10). Applying the APA, the court concluded that the decision to terminate TPS was predetermined and not based on a "good faith" application of the statutory factors. (Nov. 19 Tr. 13-15). The court cited prior statements by the President, Vice President, and Secretary that criticized the TPS program and an executive order that directed the Secretary and others to ensure TPS designations continue "only so long as may be necessary to fulfill the textual requirements" of the TPS statute. (Nov. 19 Tr. 15-16

8

(citing Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 20, 2025))). Additionally, the court highlighted the Secretary's termination of TPS designations for other countries, finding that she was taking a "hatchet to the TPS system." (Nov. 19 Tr. 17-18). The court also faulted the Secretary's finding that Syria no longer satisfied the "ongoing armed conflict" criterion despite continued violence, including "Israeli incursions." (Nov. 19 Tr. 18). It also determined the Secretary improperly relied on the U.S. "national interest," characterizing her reliance on this factor as "contrary to the statute," "heavy handed," and "divorced from country conditions" in Syria. (Nov. 19 Tr. 19-21). The court found plaintiffs could likely show the Secretary's decision was arbitrary and capricious insofar as it was the result of "political influence," but rejected plaintiffs' other arbitrary-and-capricious theories. (Nov. 19 Tr. 21-26). The court also rejected plaintiffs' Fifth Amendment claim. (Nov. 19 Tr. 26-29).

The district court found that the non-merits factors favored plaintiffs, because plaintiffs could lose the ability to live and work in the United States and face safety risks if deported. (Nov. 19 Tr. 29-30). The court concluded that the equities and public interest favored plaintiffs

9

based on their societal contributions and on humanitarian principles. (Nov. 19 Tr. 30-31).

The court postponed the Secretary's termination determination in its entirety, rejecting the government's position that relief should be limited to the named plaintiffs under *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). (Nov. 19 Tr. 32-33). The court also found that 8 U.S.C. § 1252(f)(1) did not bar such relief, reasoning that it was merely staying agency action, not issuing injunctive relief "on the merits." (Nov. 19 Tr. 33).

Finally, the court denied the government's request to stay its order pending appeal. (Nov. 19 Tr. 35).

## ARGUMENT

The Court should expeditiously grant a stay pending appeal. A stay motion turns on the movant's likely success on the merits; irreparable harm to the movant absent a stay; the balance of equities; and the public interest. *In re World Trade Center*, 503 F.3d 167, 170 (2d Cir. 2007). Here, each factor favors a stay.

## A. The Government Is Likely to Prevail on the Merits

### 1. Section 1254a Bars Review of Plaintiffs' Claims

The TPS statute provides that "[t]here is no judicial review of *any* determination of the [Secretary] with respect to the designation, or

10

*termination* or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). The statute thus makes clear that TPS termination determinations are unreviewable, and it certainly precludes any claims that those determinations are arbitrary and capricious.

Section 1254a(b)(5)(A) precludes judicial review of all TPS terminations. The modifier "any"—in the phrase "any determination"—sweeps broadly and encompasses determinations "of 'whatever kind.'" *Patel v. Garland*, 596 U.S. 328, 338 (2022). The term "respecting" likewise "has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); *accord Patel*, 596 U.S. at 339. Indeed, the Supreme Court has held similar jurisdiction-stripping language in the INA was expansive enough to preclude judicial review of factual findings. *Patel*, 596 U.S. at 337-40 (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter).

Applying § 1254a(b)(5)(A) here is straightforward. Plaintiffs challenge the Secretary's "determination[s] . . . with respect to the . . .

11

termination" of Syria's TPS designation. 8 U.S.C. § 1254a(b)(5)(A). For such claims Congress has expressly provided "there is no judicial review." *Id.*

At a minimum, § 1254a(b)(5)(A) bars claims that an agency's decision was arbitrary and capricious. "'[I]f a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective.'" *Yale New Haven Hospital v. Becerra*, 56 F.4th 9, 20 (2d Cir. 2022) (emphasis omitted). To hold otherwise "would eviscerate the statutory bar, for almost any challenge to [a determination] could be recast as a challenge to its underlying methodology." *DCH Regional Medical Center v. Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019).

The Supreme Court twice accepted this argument by granting stays that necessarily concluded the government would likely succeed on the merits in its argument that arbitrary-and-capricious claims challenging the Venezuela TPS termination were unreviewable. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (applicant must make "'strong showing that [it] is likely to succeed on the merits'" to receive stay); *NTPSA*, 145 S. Ct. at 2728; *NTPSA*, 2025 WL 2812732 at *1. The government's only argument

12

that it would succeed on those arbitrary-and-capricious claims was that § 1254a(b)(5)(A) barred those claims. [2] The Supreme Court thus necessarily accepted this argument—twice.

Supreme Court decisions on interim relief "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *accord CASA*, 606 U.S. at 873 (Kavanaugh, J., concurring) (Supreme Court's interim orders often "effectively settle, *de jure* or *de facto*, the interim legal status of ... executive actions nationwide"). The two *NTPSA* stay orders thus "control[]" in this posture. *Boyle*, 145 S. Ct. at 2654. The district court's protest that it would be "speculation" to draw conclusions from the Supreme Court's orders is mistaken. (Nov. 19 Tr. 5). The Supreme Court said that its decisions rested on the "parties' legal arguments." 2025 WL 2812732, at *1. And the government's only argument on the arbitrary-and-capricious claims there was that 8 U.S.C. § 1254a(b)(5)(A) bars the claims. The Supreme Court's stay orders should therefore be read to apply equally to this case.

---

[2] *NTPSA*, No. 24A1059 (U.S.), Gov. Stay Appl. 15-20 (filed May 1, 2025), https://www.supremecourt.gov/docket/docketfiles/html/public/ 24a1059.html; *NTPSA*, No. 25A326 (U.S.), Gov. Stay Appl. 16-19 (filed Sept. 19, 2025), https://www.supremecourt.gov/docket/docketfiles/html/ public/25a326.html.

The district court here concluded that while it cannot directly review TPS termination determinations, it may set aside such determinations if it finds unlawful "patterns and practices" or "procedural" errors. (Nov. 19 Tr. 11, 13, 15). The *NTPSA* district court made the same distinctions in the orders the Supreme Court stayed. 773 F. Supp. 3d at 831; 2025 WL 2578045, at *16. The statute provides no such workarounds, for the reasons explained above. It forecloses judicial review of "any determination . . . with respect to the . . . termination" of a TPS designation, without exceptions for challenges to the underlying process. 8 U.S.C. § 1254a(b)(5)(A).

Even if the court could entertain pattern-and-practice challenges, plaintiffs' claims would fail because they directly attack the Secretary's decisions. Plaintiffs do not challenge any guidance document, regulation, or policy distinct from the Secretary's termination of Syria's TPS designation. Instead, they explicitly challenge the substance of her determinations—her findings, reasoning, evidentiary support, and conclusions. Indeed, plaintiffs argue, and the district court agreed, that the Secretary erroneously "found no 'ongoing armed conflict' in Syria, contrary to the U.S. State Department's own Do Not Travel warning."

14

(Dist. Ct. Dkt. No. 21 at 14; Nov. 19 Tr. 18).[3] Similarly, plaintiffs argued, and the district court accepted, that the Secretary allowed "political direction" to influence her decision, insisting it is "otherwise unjustifiable" and "deeply implausible." (Dist. Ct. Dkt. No. 21 at 17-18; Nov. 19 Tr. 25). That plaintiffs seek vacatur of the Secretary's TPS determination confirms the true nature of their suit—a direct attack on that determination. (Compl. ¶ 176-77); *see Ramos v. Wolf*, 975 F.3d 872, 893 (9th Cir. 2020) (claims were not true collateral challenges partly because they "seek direct relief from the challenged decisions"), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023).[4]

### 2. Section 1252(f)(1) Precludes Plaintiffs' Requested Relief

The government is further likely to prevail because the district court's order impermissibly restrains the Secretary's operation of the TPS statute in violation of 8 U.S.C. § 1252(f)(1), which strips "court[s] (other than the Supreme Court)" of "jurisdiction" to "enjoin or restrain"

---

[3] Again, the district court here followed the twice-stayed *NTPSA* district court. 773 F. Supp. 3d at 814 (emphasizing State Department travel warning); 2025 WL 2578045, at *1 (similar).

[4] *En banc* review was granted, vacating the panel decision, but no *en banc* decision ever issued.

the operations of part IV of this subchapter," in any "action or claim" by any "party" (with one exception not relevant here). This provision "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez,* 596 U.S. 543, 550 (2022).

Section 1254a is one of the statutory provisions that § 1252(f)(1) covers. In the U.S. Code, § 1254a (the TPS statute) appears in part V of the relevant subchapter. The public law enacted by Congress, however, strips lower courts of the authority to enjoin or restrain "the provisions of chapter 4 of title II," which contains the TPS statute (section 244 of the INA as amended). Illegal Immigration Reform and Immigrant Responsibility Act of 1996, div. C, Pub. L. No. 104-208, §§ 306 (enacting § 1252(f)), 308 (specifying section 244 as part of chapter 4), 110 Stat. 3009. When the enacted text and the U.S. Code conflict, the enacted text prevails. *U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.,* 508 U.S. 439, 448 (1993) ("United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a),

16

[but] it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112. . . .").

The district court here agreed § 1252(f)(1) covers the TPS statute. (Nov. 19 Tr. 33); *accord NTPSA v. Noem*, 150 F.4th 1000, 1018 n.8 (9th Cir. 2025) (same conclusion). But it reasoned that § 1252(f)(l) did not prevent it from postponing agency action under 5 U.S.C. § 705 because this relief was "not injunctive relief." (Nov. 19 Tr. 33). But § 1252(f)(1) is not limited to injunctions; it prohibits any orders that "enjoin or restrain" the operation of a covered statute "[r]egardless of the nature of the action or claim." 8 U.S.C. § 1252(f)(1). The relief issued here undoubtedly "restrain[s]" the Secretary's implementation of the TPS statute by delaying the termination of Syria's TPS designation. And the order was effectively an injunction, as it had the same "practical effect[]." *Immigrant Defenders*, 145 F.4th at 983-84. It was therefore impermissible under § 1252(f).

### 3. Plaintiffs' Claims Lack Merit, Even If Reviewable

Because judicial review of plaintiffs' claims is barred, the government has necessarily shown a likelihood of success. Regardless, the government is likely to succeed because plaintiffs' claims lack merit.

17

As explained above and in the Notice, the Secretary reasonably terminated Syria's TPS designation after considering the statutory factors. "Under the APA, courts review agency action to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Friends of Animals v. Romero*, 948 F.3d 579, 585 (2d Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)). This "'narrow'" standard does not allow a court "'to substitute its judgment for that of the agency.'" *Friends of Ompompanoosuc v. FERC*, 968 F.2d 1549, 1554 (2d Cir. 1992). The Secretary's determination is well "within the bounds of reasoned decisionmaking." *Baltimore Gas & Electric Co. v. NRDC*, 462 U.S. 87, 105 (1983); *accord New Jersey v. Bessent*, 149 F.4th 127, 152 (2d Cir. 2025) (agency need only "examine[] the relevant data and articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made" (quotation marks omitted)).

The district court erred by substituting its own judgment for the Secretary's and by showing no deference to her foreign policy- and national security-laden judgments. For example, the district court concluded the Secretary's termination of Syria's TPS status violated the APA to the extent that it was "predetermined" and resulted from undue

18

"political influence" because members of the administration previously criticized the TPS program and because the President ordered that TPS designations should continue only if permitted by statute, after which several TPS designations were terminated. (Nov. 19 Tr. 13, 15-16, 22, 25).

But "a court may not set aside an agency's policymaking decision solely because it might have been . . . prompted by an Administration's priorities." *Department of Commerce v. New York*, 588 U.S. 752, 781 (2019). "A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs . . . ." *Motor Vehicle Manufacturers Ass'n, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part). Indeed, "[i]t is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies." *Ramos*, 975 F.3d at 897-98. And it is "hardly improper for an agency head to come into office with policy preferences and ideas" and then "substantiate the legal basis for a preferred policy." *Commerce*, 588 U.S. at 778. That a new administration may pursue its policy priorities is a feature of our democratic constitutional system, not a basis to

19

invalidate agency decisions. And the relevant executive order just ordered officials to comply with the TPS statute and to act "appropriately" and as "necessary," which does not preordain TPS terminations for any country. 90 Fed. Reg. at 8446. Nor is it unlawful to "implement the President's policy directives to the extent permitted by law." *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012).

The district court also faulted the Secretary for not considering "intervening events," such as "Israeli incursions." (Nov. 19 Tr. 18). But the "Secretary possesses full and unreviewable discretion as to whether to consider intervening events," and the district court's attempt to micromanage the Secretary's foreign-affairs judgments has no basis in the TPS statute. *Ramos*, 975 F.3d at 899. Further, "when it comes to collecting evidence and drawing factual inferences" in the area of foreign affairs and national security, " 'the lack of competence on the part of the courts is marked,' and respect for the Government's conclusions is appropriate." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010) (citation omitted).

The district court also criticized the Secretary for concluding that the "ongoing armed conflict" criterion was no longer satisfied because

State Department advisories warn against travel to Syria. But these advisories serve a different purpose: they are an "assessment of threats only insofar as they may impact U.S. citizens, nationals, and legal residents."[5] More important, the Secretary never denied the persistence of violence in Syria. Instead, she found the "nature of the violence" had changed from a "national-level war" to "localized clashes and then lessened to sporadic, isolated episodes of violence" that did not prevent Syrians from returning home as millions have done. 90 Fed. Reg. at 45,400, 45,402.[6] The district court's analysis contravened the Supreme Court's instruction that "it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy

---

[5] https://travel.state.gov/en/international-travel/travel-advisories.html.

[6] The district court faulted the Notice for citing a September 2025 U.N. report about the return of displaced Syrians, because the report "postdated the deadline for her to make a final decision." (Nov. 19 Tr. 18). But the return of displaced Syrians had been documented months earlier. *See, e.g.*, https://www.unhcr.org/us/news/stories/syria-unhcr-s-grandi-urges-more-support-refugees-returning-home (June 2025 U.N. report stating that "[m]ore than 2 million Syrians have returned home since December"); https://www.unrefugees.org/news/repatriation-explained-why-syrian-refugees-are-voluntarily-returning/ (March 2025 U.N. report).

in light of those assessments." *Munaf v. Geren*, 553 U.S. 674, 700-01 (2008).

The court also faulted the Secretary's reliance on the U.S. "national interest" in terminating the TPS designation, reasoning that her analysis was "divorced from an analysis of country conditions" in Syria and therefore "contrary to the statute." (Nov. 19 Tr. 19, 21). But the statutory text requires the Secretary to consider whether "permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C). And the Secretary "shall terminate" the designation if she determines the country "no longer continues to meet the conditions for designation under [§ 1254a(b)(1)]." *Id.* § 1254a(b)(3)(B). Here, Syria was previously designated because it met the "condition" set forth in § 1254a(b)(1)(C) that requires both that the country conditions be "extraordinary and temporary conditions" and that the designation be in the "national interest." Once the Secretary determined that the designation was "contrary to the national interest," the "condition[] for designation under [§ 1254a(b)(1)]" "no longer continue[d] to [be] me[t]," and the statute required termination. *Id.* § 1254a(b)(1)(C), (3)(B).

22

Nowhere does the TPS statute constrain what the Secretary can and cannot consider when deciding what is in the national interest—let alone require her to focus on foreign country conditions when deciding what is the United States' national interest.[7] The question of what serves the national interest offers "no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993); *see Trump v. Hawaii*, 585 U.S. 667, 684-86 (2018) (where President has discretion to determine if alien's entry "would be detrimental to the interests of the United States," courts should not inquire "into the persuasiveness of the President's justifications"); *Webster v. Doe*, 486 U.S. 592, 600 (1988) (" 'in the interest of the United States' . . . exudes deference" and lacks "meaningful judicial standard of review").

Besides improperly confining the scope of the Secretary's inquiry, the court ignored that the Notice did consider conditions in Syria when

---

[7] While the statute directs the Secretary to consider "the conditions in the foreign state" when deciding to extend TPS status, it does not limit the Secretary's review to those conditions; she instead must "determine whether the conditions for [TPS] designation . . . continue to be met," which requires her to examine whether the TPS designation is still in the national interest. 8 U.S.C. § 1254a(b)(3)(A).

23

assessing the national interest factor—including that the government lacks access to reliable records to vet Syrian nationals entering this country. 90 Fed. Reg. at 45,401. The Secretary also highlighted Syria's strengthening relations with the United States and Europe, which the State Department and intergovernmental organizations reported could contribute to improving conditions in Syria. *Id.* at 45,401-02.

Finally, the district court also doubted the Secretary engaged "in the requisite interagency consultation" (Nov. 19 Tr. 18), but the Notice itself states that the Secretary's decision was "informed by her consultations with appropriate U.S. Government agencies" while citing State Department sources to justify her conclusions. 90 Fed. Reg. at 45,400-01. The court's conclusion that no such consultation occurred lacked evidentiary support and contradicts the "presumption of legitimacy" of agency action. *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).

## B. Equitable Factors Favor a Stay Pending Appeal

The court also erred because the equities decisively favor the government. The Supreme Court has twice weighed the equities and the government's likelihood of success, and twice concluded the government

24

is entitled to a stay enabling the Secretary's TPS determinations to take effect. Because the equities in this case are materially the same as in *NTPSA*, this Court should grant a stay.

Moreover, the government suffers irreparable injury "[a]ny time" it is "enjoined by a court from effectuating statutes enacted by representatives of [the] people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). The harm here is pronounced because the Secretary determined that the termination of Syria's TPS designation was needed to protect "the national interest" based on "foreign policy, public safety . . . , national security . . . , and economic considerations." 90 Fed. Reg. at 45,400. Those concerns are especially relevant considering "Syria's continued designation as a state sponsor of terrorism" and the inability of the United States to "adequately vet Syrian nationals." *Id.* at 45,401. Further, extending Syria's TPS designation "could complicate the administration's broader diplomatic engagement" with Syria's new government. *Id.* at 45,402. Courts should not interfere with sensitive, ongoing diplomacy—an area that is "the province and responsibility of the Executive" and where "the courts have traditionally shown [it] the utmost deference." *Department of the Navy v. Egan*, 484 U.S. 518, 529-30

(1988) (quotation marks omitted). Finally, the government and the public share an interest in ensuring that the process established by Congress—under which the Secretary has unreviewable authority to carefully weigh the statutory factors governing TPS designations—is followed.

The district court found that the termination would irreparably harm plaintiffs because it "will result in immediate vulnerability to arrest, detention, deportation, and family separation." (Nov. 19 Tr. 29). But loss of expressly temporary protection from removal and associated benefits (such as employment authorization) is inherent in the statute. Moreover, "removal alone cannot constitute the requisite irreparable injury" to justify a stay. *Nken*, 556 U.S. at 435.

In the face of materially identical equitable factors, the Supreme Court twice held that the equities favor the government. For the same reasons, the government should be allowed to implement the TPS termination here pending appeal.

## C. The District Court's Relief Was Overbroad

Even if the district court were otherwise correct, the relief it ordered was impermissibly universal and broader than necessary to remedy actual harm shown by specific plaintiffs. *CASA,* 606 U.S. at 851-52.

26

Limits on courts' equitable authority apply to relief under 5 U.S.C. § 705 just as to preliminary injunctions, and nothing in that provision suggests otherwise. *See Hecht v. Bowles*, 321 U.S. 321, 330 (1944) (courts should not "lightly imply" a "major departure" from the "long tradition" of equity). To the contrary, § 705's language embraces principles of equity, authorizing "all necessary and appropriate process" and making clear that "irreparable injury," a traditional equitable inquiry, is a key consideration. 5 U.S.C. § 705; *see Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (interpreting similar statutory text to incorporate traditional equitable principles). Section 705 "was primarily intended to reflect" the "existing law," not to "fashion new rules" governing remedies. *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974); Louis L. Jaffe, *Judicial Control of Administrative Action* 662 (1965) (§ 705 "relates the power granted under the All Writs statute to the review of administrative orders"); Tom C. Clark, *Attorney General's Manual on the Administrative Procedure Act* 106 (1947) (§ 705 "is an equitable power, to be exercised 'upon such conditions as may be required.'"). In sum, there is no basis to read § 705 to depart from the "party-specific principles" that "permeate

27

our understanding of equity," and the Court should stay the district court's impermissibly overbroad order. *CASA*, 606 U.S. at 844.

## CONCLUSION

The Court should stay the district court's order pending final resolution of the government's appeal.

Dated:  New York, New York
          December 4, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants-Appellants.*

By: /s/ *Mark Osmond*
    MARK OSMOND
    BENJAMIN H. TORRANCE
    Assistant United States Attorneys
    86 Chambers Street, Third Floor
    New York, NY 10007
    Telephone: (212) 637-2713
    Email: mark.osmond@usdoj.gov

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the above-named counsel hereby certifies that this memorandum complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare it, this memorandum contains 5152 words.