UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| Dahlia DOE, et al., <br>                 Plaintiffs-Appellees, <br><br> v. <br><br> Markwayne MULLIN, et al., <br>                 Defendants-Appellants. | Docket No. 25-2995 |

**Plaintiffs-Appellees' Opposition to Defendants-Appellants'
Motion for a Stay**

In the absence of any emergency, Defendants-Appellants ask this
Court to circumvent customary appellate procedure and violate
jurisdictional rules by staying a district court decision over which this
Court has not yet regained jurisdiction. There is no justification for the
Government's extraordinary request to disrupt orderly federal rules and
procedures only to exacerbate chaos and suffering for the Plaintiffs-
Appellees.

The district court decision at issue temporarily postponed the
termination of Temporary Protected Status (TPS) for 6,100 Syrians—
including highly skilled medical professionals, caretakers, educators,
business owners, and other integral members of society who will lose

1

work authorization and protection from detention and deportation when the district court's postponement order is lifted. But instead of waiting for the Supreme Court's mandate to issue in a mere seventeen days and for the case to be returned to this Court and then remanded to the district court for proceedings consistent with the Supreme Court's opinion, Defendants-Appellants ask to have the postponement order immediately stayed and for this Court to put the termination into effect now.

The Supreme Court opted not to use its procedural mechanisms to achieve Defendants-Appellants' desired results: it denied Defendants-Appellants' stay application and did not immediately issue its mandate, as it has done in other cases. Defendants-Appellants offer no compelling reason to justify this Court taking a different course. Syrian TPS holders and the public will suffer irreparable harm from being prematurely stripped of their status. Meanwhile, Defendants-Appellants will suffer no harm from waiting until the Supreme Court's mandate issues in less than three weeks and the appeal is returned to this Court in the normal course of procedure.

## BACKGROUND

This case concerns a district court order that temporarily postponed the termination of TPS—a humanitarian immigration protection—for Syrians while the parties litigated the merits of Plaintiffs-Appellees' challenge.

On February 17, 2026, this Court denied Defendants-Appellants' initial request for a stay of the postponement order pending appeal, on the basis that Defendants-Appellants had not established a strong likelihood of success on the merits and would not suffer irreparable harm in the absence of the stay. Order Den. Stay Mot. 3, Dkt. No. 37.1. This Court held that the failure to demonstrate irreparable harm was "a sufficient basis to deny the stay," but further concluded that "the balance of equities and the public interest [] decidedly favor the Plaintiffs-Appellees." *Id.*

On February 26, 2026, Defendants-Appellants moved for a stay pending appeal from the Supreme Court and sought a grant of certiorari before judgment over the issues presented on appeal. *Mullin v. Doe,* 25-1083 (U.S. Feb. 26, 2026). On March 16, 2026, the Supreme Court granted certiorari before judgment in this case. *Mullin v. Doe,* 25-1083

(U.S. Mar. 16, 2026). At that time, the Supreme Court deferred ruling on the motion for a stay pending appeal, leaving in place the lower court's postponement order. *Id.*

On June 25, 2026, the Supreme Court issued a decision in this case. *Mullin v. Doe,* No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026). The Supreme Court decided the case on jurisdictional grounds, holding that federal courts lacked jurisdiction to review Plaintiffs-Appellees' Administrative Procedure Act (APA) claims that the terminations of TPS for Syria and Haiti violated statutory procedural requirements and were arbitrary and capricious, while declining to decide the question of whether courts lack jurisdiction over related constitutional claims. *Mullin,* 2026 WL 1825840, at *1–2; 10.

Subsequently, the Supreme Court Clerk of Court informed this Court that "the judgment or mandate of th[e] [Supreme] Court will not issue for at least thirty-two days pursuant to Rule 45 [of the Rules of the Supreme Court of the United States]." Letter, June 26, 2026, Dkt. No. 54.1. On June 30, 2026, the Supreme Court denied Defendants-Appellants' request for a stay pending appeal as moot. *Mullin v. Doe,* 25-1083 (U.S. June 30, 2026). The next day, July 1, 2026, Defendants-

4

Appellants filed another motion for a stay pending appeal with this Court. Mot. for Stay Pending Appeal, Dkt. No. 55.1.[1] In their motion for a stay, Defendants-Appellants concede that the Supreme Court has "resolved this appeal" and ask for a stay not to allow resolution of pending issues but rather to "promptly effectuate the Supreme Court's decision" in advance of the issuance of the mandate. *Id.* at 2.

## ARGUMENT

I.  **This Court Does Not Have Jurisdiction Over the Postponement Order Until the Supreme Court Mandate Issues.**

This Court does not regain jurisdiction over this appeal until the Supreme Court's mandate issues and therefore does not have jurisdiction to issue a stay pending appeal at this juncture. *See United States v. Rivera,* 844 F.2d 916, 921 (2d Cir. 1988) ("Simply put, jurisdiction follows the mandate."); *United States v. Rodgers,* 101 F. 3d 247, 251 (2d Cir. 1996) (lower court does not regain jurisdiction until the issuance of appellate mandate); 5 Am. Jur. 2d App. Rev. § 679 (2026) ("An appellate

---

[1] On July 1, the district court also ordered the parties to provide status updates by July 16 on next steps in the case in light of the Supreme Court's decision. Order, *Doe v. Mullin,* 25-cv-8686 (S.D.N.Y.), ECF No. 81.

court retains control over an appeal until it issues a mandate and the decision is not final until a mandate is issued. . . . The mandate of a court of review . . . is necessary to reinvest the lower court with jurisdiction to proceed with the case.").

The Supreme Court has not yet issued its mandate in this case and will not issue a mandate until at least July 27, 2026. *See* Dkt. No. 54.1. Had the Supreme Court determined that there was a necessity for its judgment to take immediate effect, it could have expedited issuance of the mandate, as the Court has done in other cases. *See* Op., *Callais v. Louisiana,* 25A1197 (U.S. May 4, 2026) (election case); *Trump v. Anderson,* 601 U.S. 100, 117 (2024) (in election case, ordering that "[t]he mandate shall issue forthwith."); *see also Alexander v. Holmes Cnty. Bd. of Educ.,* 396 U.S. 19, 20–21 (1969) (in school de-segregation case, ordering that "the judgment shall issue forthwith and the Court of Appeals is requested to give priority to the execution of this judgment as far as possible and necessary."). But the Court did not take such a measure in this case.

Defendants-Appellants could have made a request to the Supreme Court for expeditious issuance of the mandate were there an identifiable

6

emergency here—as the appellants in *Callais* recently did. *See* Appl. for Issuance of a Copy of the Op. & Certified Copy of the J. Forthwith, *Callais,* 25A1197 (U.S. Apr. 29, 2026). But Defendants-Appellants did not make any such request of the Supreme Court, circumventing this available procedure to instead ask this Court to "promptly effectuate the Supreme Court's decision," Dkt. 55.1 at 2, prior to the issuance of the mandate. Defendants-Appellants' request is improper as it asks this Court to preemptively act before it regains jurisdiction over the case, and the request should be denied. [2]

## II. There Are No Longer Any Substantive Issues for This Court to Resolve That Could Justify a Stay Pending Appeal.

The justification for a stay of an order pending appeal is predicated on the appellate court's need for time to consider the issues presented, without prejudicing an irreparably harmed party through delayed resolution. Where there are no longer any substantive issues in consideration on appeal—as Defendants-Appellants concede—this

---

[2] While Plaintiffs-Appellees maintain that lower courts do not regain jurisdiction until a higher court's mandate issues, to the extent Defendants-Appellants disagree, they violated the Federal Rules of Appellate Procedure by failing to move for a second stay in the district court first or establishing that such efforts "would be impracticable." *See* Fed. R. App. P. 8(a)(2).

central justification for a stay pending appeal evaporates. *See id.* (the Supreme Court has "resolved this appeal").

As the Supreme Court made clear in *Nken v. Holder,* the stay pending appeal is a "means of ensuring that appellate courts can responsibly fulfill their role in the judicial process." 556 U.S. 418, 427 (2009). The justification for such stays is based on the fact that "[i]t takes time to decide a case on appeal." *Id.* at 421. "No court can make time stand still," but "if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review." *Id.* (internal citation and quotation omitted). Thus, to ensure careful judicial review while protecting the rights of the parties, courts may issue stays to "hold a ruling in abeyance to allow an appellate court the time necessary to review it." *Id.*

There is no justification for issuing a stay pending appeal in this case, where there are no longer any substantive issues pending appeal and the case imminently can be returned to the district court for further proceedings. The Supreme Court has already recognized as much in denying Defendants-Appellants' pending request for a stay pending appeal as moot, *see Mullin v. Doe,* 25-1083 (U.S. June 30, 2026); *infra* p.

10. This Court should similarly deny Defendants-Appellants' untimely and unjustified motion.

### III. There Is No Emergency or Irreparable Harm to Defendants-Appellants to Justify a Stay.

Crucially, Defendants-Appellants have not established that they face irreparable harm by waiting less than three weeks until the Supreme Court's mandate issues to implement their termination of TPS for Syria. To prevail on an application for a stay, Defendants-Appellants must establish that they face actual and irreparable harm in the absence of relief. *See Nken,* 556 U.S. at 434–45 (a "possibility of irreparable injury" is not enough to merit a stay); *see also Mohammed v. Reno,* 309 F.3d 95, 101 (2d Cir. 2002) (even where likelihood of success is high, stay applicant must still establish "some injury" faced in absence of stay (internal citation and quotation omitted)).

This Court has already held that Defendants-Appellants did not establish any "actual or imminent" irreparable harm from a longer postponement of the termination of TPS for 6,100 Syrian TPS holders. *See* Dkt. No. 37.1 at 3 (Defendants-Appellants' generalized public safety and national interest harms were not "sufficiently 'actual and imminent' to justify immediate intervention"). Defendants-Appellants' instant

9

motion does not offer anything new or concrete to establish irreparable harm. Rather, they only claim that the Supreme Court's unreasoned grants of an emergency stay pertaining to *Venezuela*'s TPS termination, which necessarily involved different interests and country-specific facts, supports Defendants-Appellants' generalized claims of irreparable harm here. *See* Dkt. No. 55.1 at 3–5. But Defendants-Appellants' argument that the Supreme Court's prior unreasoned stay decisions in another case should dictate the outcome here is undercut by the Supreme Court's deferred decision—and ultimate denial—of Defendant's-Appellants' stay request *in this case. See Mullin,* 25-1083 (U.S. June 30, 2026).

Moreover, this Court, too, has considered and rejected the same irreparable harm arguments. *Compare* Dkt. No. 55.1 at 3–5 *with* Dkt. No. 37.1 at 3 (rejecting arguments that the Supreme Court's decision to stay lower court orders preventing the government from terminating TPS for 300,000 Venezuelans established *per se* irreparable injury to the government from the postponed termination of TPS for 6,100 Syrians). And nothing about the Supreme Court's decision changes the irreparable harm analysis now. While the Supreme Court resolved the jurisdictional issue presented on appeal in favor of Defendants-Appellants, *Mullin,*

10

2026 WL 1825840, at \*1–\*2, the decision does not address or opine on the question of whether the government faces irreparable harm from being temporarily prevented from implementing its TPS termination decisions.

Defendants-Appellants have documented no actual harm to the government in the several months that Syrian TPS holders have continued to live and work in safety in the United States during the pendency of this appeal. *See* Dkt. No. 55.1 at 4. They similarly have failed to demonstrate how another seventeen days of safety and work authorization for Syrian TPS holders would cause any concrete harm to the government.

A stay "is an intrusion into the ordinary processes of administration and judicial review" and "accordingly is not a matter of right[.]" *Nken,* 556 U.S. at 427 (internal citations and quotations omitted). Defendants-Appellants have offered no new reasoning to justify this extraordinary remedy—especially given the "circumstances of this particular case," *id.* at 433, in which Defendants-Appellants seek an untimely stay of an appeal *after* a substantive decision and before issuance of the appellate mandate, in clear circumvention of customary procedure and

11

jurisdictional rules, and where the risk of harm tips decidedly in Plaintiffs-Appellees' favor. *Infra* Part IV.

### IV. The Balance of the Equities and Public Interest Continue to Strongly Favor Plaintiffs-Appellees and Further Counsel Against the Grant of a Stay at This Juncture.

This Court has already found that the balance of the equities and the public interest "decidedly favor the Plaintiffs-Appellees," as "upon termination of their TPS they will be stripped of their authorization to work in the United States and face immediate removability to Syria." Dkt. No. 37.1 at 3. The balance of the equities and the public interest continue to lean strongly in favor of Plaintiffs-Appellees and counsel against the issuance of a premature and unprecedented stay in this case.

While Defendants-Appellants have since prevailed on their jurisdictional arguments at the Supreme Court, the Court's decision did not undermine or change the analysis regarding the imminent and severe harms Plaintiffs-Appellees face because of the termination of their TPS. *See Mullin,* 2026 WL 1825840, at *17 (Kagan, J., dissenting) ("There is no dispute that the plaintiffs will suffer irreparable harm absent postponement of the TPS decisions."). This includes Plaintiff-Appellee Sara Doe, a highly specialized pediatrician, who will lose her work

authorization immediately when TPS ends—and with it, her ability to provide life-saving medical treatment to her patients. J.A. 543–546. Similarly, Plaintiff-Appellee Laila Doe relies on her TPS work authorization to work as a behavioral technician for individuals with disabilities and to serve as the sole provider for her elderly U.S. citizen mother and minor daughter. *Mullin,* 2026 WL 1825840, at *21. Plaintiffs-Appellees and other affected Syrian TPS holders who stand to lose their work authorization and face detention and possible removal to a deeply unsafe country have acted in reliance on the predictability of legal procedure and the Supreme Court's communicated timeline for issuance of its mandate, *see* Dkt. No. 54.1, to make plans for the imminent loss of their TPS protection.

Similarly, the Supreme Court's decision did not address the significant harm to the public interest from the termination of TPS for thousands of law-abiding TPS holders. *See* Br. of Resp'ts' Dahlia Doe, et al. 55–56, *Mullin v. Doe,* 25-1083 (U.S. Apr. 13, 2026); *see also* J.A. 651–52 (finding a public interest in upholding humanitarian principles and because TPS holders make positive contributions to their communities). Defendants-Appellants offer no new arguments to explain why an

13

unprecedented stay for a matter of weeks is now in the public interest, instead citing only general and conclusory language from the original termination notice. *Compare* Dkt. 55.1 at 3–5 *with* Defendants-Appellants' First Mot. for Stay Pending Appeal 25–26, Dkt. No. 12.1 (citing much of the same language from the termination notice). Both the district court and this Court already rejected Defendants-Appellants' arguments in the initial stay proceedings, *see* J.A. 652; Dkt. No. 37.1 at 3, and the Supreme Court's opinion did not in any way address or bolster these unsupported claims. And for purposes of this stay application, there is a strong countervailing public interest in the government respecting procedural and legal rules that allow for predictability and orderly implementation of court decisions, especially those decisions that have a weighty and irreversible impact on individuals' lives.

Rather than issue an unprecedented and unjustified stay of the district court's postponement order, this Court should follow customary appellate procedure and, after the Supreme Court's mandate issues, remand this case to the District Court for further proceedings. Given the irreparable harm faced by Plaintiffs-Appellees when the termination of their TPS takes effect, *see supra* pp. 12–13, it is particularly important

that the status quo be maintained until the district court considers the Supreme Court's opinion, the relevant facts, and any arguments presented by the parties in the first instance before issuing any further decisions. While the Supreme Court has reversed the district court's grant of preliminary relief on certain claims on a jurisdictional basis, the decision does not foreclose Plaintiffs-Appellees from pursuing alternative claims and moving to obtain relief in the district court, including on an expedited basis. The district court has already acted promptly to set a July 16 deadline for the parties to provide updates to the district court on next steps, *see* Order, *Dahlia Doe v. Mullin,* 25-cv-08686 (S.D.N.Y. July 1, 2026), ECF No. 81, and the Supreme Court's mandate will issue soon after, allowing this Court to promptly remand the case to the district court. Defendants-Appellants have provided no basis for the Court to interfere with the district court's inherent case management authority and role as the initial decisionmaker by issuing a stay before the case can be remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants-Appellants' Second Motion for a Stay.

15

Dated: July 8, 2026

Respectfully submitted,

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
*/s/Megan Hauptman*
Megan Hauptman
650 Massachusetts Ave NW
Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

Guadalupe Aguirre
Ghita Schwarz
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
gschwarz@refugeerights.org

MUSLIM ADOVCATES
Melissa Keaney
Sadaf Hasan*
1032 15th Street N.W. #362
Washington, D.C. 20005
(202) 655-2969
melissa@muslimadvocates.org
sadaf@muslimadvocates.org

VAN DER HOUT LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post Street, Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
ndca@vblaw.com

16

*Counsel for Plaintiffs-Appellees*

*Application for admission pending

## Certificate of Compliance

The above-named counsel hereby certifies that this motion complies with the type-volume limit, typeface requirements, and type-style requirements of the Federal Rules of Appellate Procedure 27(d)(1)(E) and 27(d)(2). As measured by the word processing system used to prepare it, this motion contains 2,769 words.