UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Dahlia Doe, et al.,

        Plaintiffs-Appellees,

    v.

Markwayne Mullin, Secretary of
Homeland Security, in his official
capacity, et al.,

        Defendants-Appellants.

Docket No. 25-2995

**Defendants-Appellants' Reply in Further Support of Their
Renewed Motion for a Stay**

## Introduction

Plaintiffs do not—and cannot—dispute the central facts underlying this motion: the Supreme Court has reversed the district court's decision and held that the postponement order should never have been issued. Yet that order has, for more than seven months, blocked the Executive Branch from implementing a lawful, unreviewable, and now judicially vindicated determination that Syria's Temporary Protected Status ("TPS") designation should be terminated for reasons grounded in national security and foreign policy.

Plaintiffs cannot defend the postponement order on the merits, so they instead insist that this Court is powerless to disturb it. That is

wrong. This Court has authority to stay the district court's order, and every stay factor now points in the government's favor. The Court should grant an immediate administrative stay while it considers this motion and ultimately grant the motion.

## ARGUMENT

As the government's motion explained (Dkt. No. 55.1 ("Mot.") at 2–5), every stay factor favors relief. *See Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (listing factors). The government is certain to prevail on the merits, having already done so in the Supreme Court, which diminishes the importance of the other factors. *Mullin v. Doe*, 609 U.S. ----, No. 25–1083, 2026 WL 1825840 (U.S. June 25, 2026) (reversing district court); *Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001) ("[l]ikelihood of success is the main bearing wall of the four-factor framework" (quoting *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996))). The remaining factors (balance of equities and the public interest) likewise favor a stay. Each day the reversed order remains in force irreparably injures the government and the public by barring the Executive Branch from carrying out a lawful determination undertaken pursuant to the TPS statute. Mot. at 4–5 (citing *Termination*

2

*of the Designation of Syria for Temporary Protected Status*, 90 Fed. Reg. 45,398, 45,400–05 (Sept. 22, 2025)); *Trump v. CASA, Inc.*, 606 U.S. 831, 859–61 (2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C. J., in chambers))); *Nken*, 556 U.S. at 435–36 (explaining that the harm-to-the-opposing-party and public-interest factors "merge when the Government is the opposing party" and rejecting the assumption that delaying immigration enforcement causes an "absence of any injury to the public interest"). Whatever harm plaintiffs might face, it cannot justify leaving in place an order that conflicts with binding Supreme Court precedent. *See Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) ("Whether presumed or not, any irreparable harm plaintiffs might suffer in this case does not warrant a preliminary injunction in the absence of a showing of (at least) a likelihood of success.").

Plaintiffs' contrary arguments lack merit. Their lead argument is jurisdictional: they contend that this Court cannot act until the Supreme Court's "mandate" issues because " 'jurisdiction follows the mandate.' "

Dkt. No. 58.1 ("Opp.") at 5–7. This argument is premised on faulty terminology: formal mandates generally do not issue in cases originating from lower federal courts. *Compare* Sup. Ct. R. 45.3 ("In a case on review from any court of the United States, . . . a formal mandate does not issue unless specially directed. . . ."), *with* Sup. Ct. R. 45.2 ("In a case on review from a state court, the mandate issues 32 days after entry of the judgment. . . .").

Terminology aside, the argument fails. Just as district courts may stay their own orders, even after a notice of appeal divests them of jurisdiction over the merits of the order, this Court may stay the district court's (now-reversed) order while waiting for the Supreme Court's judgment to issue. *See Rakovich v. Wade*, 834 F.2d 673, 674 (7th Cir. 1987) ("[A] notice of appeal does not deprive the district court of jurisdiction over a motion for stay of its judgment. . . . That power is vested in the district court by virtue of its original jurisdiction over the case and continues to reside in the district court until such time as the court of appeals issues its mandate. . . ."). Indeed, "[e]very federal court in this country has within its 'traditional' toolkit the power to pause temporarily its own order or one of a lower court or issue other forms of

interim relief." *Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 922 (2024) (Gorsuch, J., concurring).

Plaintiffs make much of the Supreme Court's decision not to expedite its "mandate" and to deny the government's stay application as moot. Opp. at 4, 6–7. Neither decision helps them. The 32-day period cited in the letter from the Supreme Court's Clerk of Court (Dkt. No. 54.1) is an administrative default—not a signal about the propriety of interim relief in this Court. *See Callais v. Louisiana*, 146 S. Ct. 1111, 1111 (2026) ("the Clerk of Court ordinarily waits 32 days after the entry of the Court's judgment to send the opinion and a certified copy of the judgment to the clerk of the lower court" (citing Sup. Ct. R. 45.3)). And the denial of the government's stay application as moot is explained by its posture: that application sought a stay "pending the resolution of . . . any proceedings in [the Supreme] Court."[1] Once the Supreme Court decided this case, there was nothing left pending to justify any stay—rendering the application moot. That disposition has no bearing on this Court's

---

[1] *See* Gov. Stay. App. at 35, *available at* https://www.supremecourt.gov/DocketPDF/25/25-1083/397345/20260226084504693_Noem%20v.%20Doe%20Application_final.pdf.

authority to stay the district court's order. And that the government could have asked the Supreme Court to expedite its judgment, *see* Opp. at 6–7, is beside the point: the availability of one avenue for relief does not foreclose another.[2]

Plaintiffs next argue that there is no need for a stay because there are no longer substantive issues pending in this Court. Opp. at 7–9. But the elimination of uncertainty as to the merits is a reason to grant relief, not to deny it. *Nken*, 556 U.S. at 434 (describing success on the merits as one of the "most critical" of the four stay factors). That the merits have been resolved does not, as plaintiffs argue, prevent this Court from issuing a stay (Opp. at 7–8); instead, the "propriety" of a stay "is dependent upon the circumstances of the particular case" and, for the

---

[2] Plaintiffs argue in a footnote that the government violated Rule 8(a)(2) by "failing to move for a second stay in the district court first or establishing that such efforts 'would be impracticable,'" while simultaneously maintaining that "lower courts do not regain jurisdiction until a higher court's mandate issues." Opp. at 7 n.2. The government satisfied Rule 8(a)(2) by requesting a stay in the district court, which denied it on November 19, 2025. Dist. Ct. Dkt. No. 59 at 34–35. The government has simply renewed its already-exhausted request for a stay. Nor is there reason to leave the postponement in place so the district court may act "in the first instance." Opp. at 14–15. The order rests on claims the Supreme Court has held are barred, and the possibility that plaintiffs might later seek relief on other theories is no basis to keep an unlawful order in force in the meantime.

reasons explained above and in the government's motion, the circumstances here weigh heavily in favor of granting one. *See Nken*, 556 U.S. at 433 (quotation marks omitted).

Plaintiffs emphasize alleged hardships that TPS holders will face upon termination of their status, *see* Opp. at 12–14, but those hardships are not legally sufficient to keep an unlawful order in force. *Forest City Daly Hous.*, 175 F.3d at 153. Further, TPS is, by statutory design, "'temporary.'" *Mullin*, 2026 WL 1825840, at *4. Plaintiffs had no entitlement to retain work authorization or protection from removal after the lawful termination of Syria's TPS designation. Their asserted harms therefore flow from the statutory scheme itself, not from any legally cognizable injury this Court can redress by perpetuating the district court's error. And plaintiffs remain free to pursue any other immigration relief for which they may be eligible—relief that could include protection from removal and work authorization.

Though plaintiffs downplay the harm suffered by the government (Opp. at 9–11), the Supreme Court has twice concluded that the government has suffered irreparable harm from erroneous stays of TPS terminations. *Noem v. Nat'l TPS Alliance ("NTPSA")*, 145 S. Ct. 2728

7

(2025); *Noem v. NTPSA*, 146 S. Ct. 23, 24 (2025). Those interim rulings "control[]" and "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). True, in February, a motions panel in this case distinguished the harms at issue here from the harms in the *NTPSA* case twice considered by the Supreme Court, noting, for example, that the other case involved a greater number of TPS holders. *See Doe v. Noem*, No. 25-2995, 2026 WL 544631, at *2 (2d Cir. Feb. 17, 2026); *but see Miot v. Trump*, No. 26-5050, 2026 WL 659420, at *6 (D.C. Cir. Mar. 6, 2026) (Walker, J., dissenting) (*NTPSA* and another TPS case were "the legal equivalent of fraternal, if not identical, twins"). That order, however, is not binding. *See, e.g., Hassoun v. Searls*, 976 F.3d 121, 134 (2d Cir. 2020) ("this court's opinion granting the government's motion for a stay pending appeal does not 'spawn[] any legal consequences' for the parties"); *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) ("in ruling that we may revisit the motions panel's decision on jurisdiction, we join nearly every other Circuit" (collecting cases)). More fundamentally, the panel's analysis rested on its preliminary—and, in hindsight, incorrect—assessment that the government was unlikely to succeed on the merits.

8

*Doe v. Noem*, 2026 WL 544631, at \*1. The Supreme Court's intervening reversal of the district court has swept that premise away. Because the panel believed the government would lose, it never considered the harm the government suffers when a lawful Executive Branch determination is prevented from going into effect. *Id.* at \*1–2. That injury is different in kind from the harm the panel weighed in February.

Finally, plaintiffs invoke the public interest in "predictability and orderly implementation of court decisions." Opp. at 14. But the public interest lies in giving prompt effect to a lawful, vindicated Executive Branch determination, not in prolonging an order that the Supreme Court has held should never have issued. *See Nken*, 556 U.S. at 427 ("The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders that the legislature has made final."); *INS v. Legalization Assistance Project of Los Angeles Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1305–06 (1993) ("balance of equities" tips in the government's favor where order was "an improper intrusion by a federal court into the workings of a coordinate branch of the Government"). Plaintiffs fail to appreciate that by granting preliminary relief and postponing lawful

agency action, the district court deployed "'one of the most drastic tools in the arsenal of judicial remedies.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (describing preliminary injunctions); *NTPSA v. Noem*, 150 F.4th 1000, 1014 (9th Cir. 2025) ("a section 705 postponement has the practical effect of a preliminary injunction"). There is, however, nothing drastic about staying that now-reversed preliminary order.

## CONCLUSION

For the reasons explained above and in the government's motion, the Court should immediately enter an administrative stay while considering this motion and then promptly stay the district court's now-reversed order postponing the effective date of the termination of Syria's TPS designation.

Dated: New York, New York        Respectfully submitted,
       July 9, 2026

                                 JAY CLAYTON
                                 United States Attorney for the
                                 Southern District of New York
                                 *Attorney for Defendants-Appellants.*

                           By:   /s/ *Mark Osmond*
                                 MARK OSMOND
                                 BENJAMIN H. TORRANCE
                                 Assistant United States Attorneys
                                 86 Chambers Street, Third Floor
                                 New York, NY 10007
                                 Telephone: (212) 637-2713
                                 Email: mark.osmond@usdoj.gov

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the above-named counsel hereby certifies that this memorandum complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare it, this memorandum contains 1,988 words.